NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| LAWRENCE SMITH | : | Hon. Dennis M. Cavanaugh |
| | : | |
| Plaintiff, | : | **OPINION** |
| | : | |
| v. | : | Civil Action No.: 10-CV-5566 (DMC) |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of Social Security, | : | |
| | : | |
| Defendant. | : | |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon the appeal of Lawrence Smith ("Plaintiff") from the final decision of the Commissioner of Social Security ("Commissioner"), denying Plaintiff's claim for a period of disability and disability insurance benefits under Title II, and Plaintiff's application for supplemental security income under Title XVI of the Social Security Act ("Act"). This Court has jurisdiction over this matter pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). No oral argument was heard pursuant to Rule 78 of the Federal Rules of Civil Procedure.

After reviewing the submission of both parties, for the following reasons, the final decision entered by the Administrative Law Judge ("ALJ") is **affirmed.**

# I   BACKGROUND

## A.   PROCEDURAL HISTORY

On April 10, 2007, Plaintiff filed a Title II application for a period of disability and disability insuran.ce benefits, as well as supplemental security income. (Transcript of Proceedings, Feb. 15, 2011 ("Tr.") Tr. 10, 121-27; ECF No. 9).  Both applications listed the onset date of the disability as November 1, 2006. (Tr. 121, 125).  The applications were initially denied September 12, 2007 and denied again upon reconsideration on July 24, 2008. (Tr. 10).  On August 4, 2008, Plaintiff filed a timely written request for a hearing.  (Tr. 10, 80-81).  A hearing was held in Newark, New Jersey on October 28, 2009 in front of Administrative Law Judge Leonard Olarsch ("ALJ Olarsch"). (Tr. 10).  ALJ Olarsch issued his decision on November 12, 2009 denying Plaintiff's claim. (Tr. 16).  On January 8, 2010, Plaintiff filed a request for review of the ALJ Olarsch's decision. (Tr. 6).  On August 24, 2010, the Appeals Council denied the request for review of the ALJ Olarsch's decision. (Tr. 1).  On October 26, 2010, Plaintiff filed a complaint against the Commissioner of Social Security (hereinafter "Commissioner"). (Compl.).

## B.   FACTUAL HISTORY

### 1.   The Findings of the Administrative Law Judge

ALJ Olarsch made eleven findings regarding Plaintiff's application for a period of disability and disability insurance benefits: 1) Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2010; 2) Plaintiff has not engaged in substantial gainful activity since November 1, 2006; 3) Plaintiff has the following severe impairments: diabetes and cervical spondylosis; 4)  Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404,

2

Subpart P, Appendix 1 (20 C.F.R. 404 §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926); 5) Plaintiff has residual functional capacity to perform the full range of light work as defined in 20 C.F.R. §§ 404.1567(B) and 416.967(b); 6) Plaintiff is unable to perform any past relevant work (20 C.F.R. §§ 404.1565 and 416.965); 7) Plaintiff was born on March 14, 1964 and was 42 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 C.F.R. §§ 404.1563 and 416.963); 8) Plaintiff has at least a high school education and is able to communicate in English (20 C.F.R. §§ 404.1564 and 416.964); 9) transferability of job skills is not material to the determination of disability because applying the Medical-Vocational Rules directly supports a finding of "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2); 10) Plaintiff is capable of finding a job that he could perform based on his age, education, work experience, and residual functional capacity (20 C.F.R. §§ 404.1569, 404.1569(a), 416.969 and 416.969(a)); and 11) Plaintiff has not been under a disability, as defined in the Social Security Act, from November 1, 2006 through November 12, 2009, the date of the decision. (Tr. 12-16).

### 2. Plaintiff's Medical History and Evidence

Plaintiff's disability claims since November 1, 2006 have related to diabetes with mild neuropathy, numbness, degenerative disc disease, cervical spondylosis, hypertension, gait, dizziness, vision problems and shortness of breath. (Tr. 13-15). Plaintiff's medical history is summarized below.

#### i. *Medical Evidence Prior to the Alleged Onset Date*

Plaintiff's diabetes symptoms first arose in 1991. He experienced polyuria, polyphagia, and polydipsia at that time. (Tr. 225). He was hospitalized with an elevated blood glucose level

and was diagnosed with diabetes. Id.  Plaintiff took oral medication to stabilize his diabetes up until 1993 when he started taking insulin. Id.  Plaintiff alleges that his diabetes was under control until a couple of years ago when he was hospitalized on two occasions, once at Christ Hospital and once at Greenville Hospital. Id.

ii. **Medical Evidence from the Alleged Onset Date: November 1, 2006**

Plaintiff lists the onset date on his application as November 1, 2006. (Tr. 121, 125). Plaintiff's medical records indicate that he was hospitalized on multiple occasions: July 15, 2007, September 11, 2007, and January 7, 2009.

The record includes outpatient registration forms dated July 19, 2007 (Tr. 179), September 15, 2007 (Tr. 201), and January 8, 2009 (Tr. 248).  Furthermore, copies of lab and test results are included and dated July 15, 2007 (Tr. 194-199), September 11, 2007 (Tr. 213-220), and January 7, 2009 (Tr. 246, 252-256, 264-278).

**a.  First Hospital Visit – July 15, 2007**

Plaintiff sought treatment at Greenville Hospital on July 15, 2007 for left-side weakness, as well as numbness and tingling in his left arm, that went away with movement of the left arm and fingers. (Tr. 191).

The results from Plaintiff's examination were largely normal. (Tr. 186, 188). He was alert and oriented, with normal respiration and vision. (Tr. 185, 188).  His blood pressure, neurological, gastrointestinal, respiratory, cardiovascular, psychological and musculoskeletal/skin diagnoses were all normal. Id.  Magnetic resonance imaging (hereinafter "MRI") revealed degenerative spondylosis at C6-C7 and C7-T1. (Tr. 191).  Plaintiff was discharged on July 19, 2007 and was told that he could resume normal activities. (Tr. 179).

Upon discharge, Plaintiff was prescribed the following medications: Naprosyn, Glucophage, Insulin 70-30 and Diovan. (Tr. 180).

### b.   Second Hospital Visit – September 11, 2007

Plaintiff was readmitted to Greenville Hospital on September 11, 2007 with complaints of numbness on both of his legs for the past "couple of days." (Tr. 205). Plaintiff's physical examination revealed nothing remarkable according to the nurse's assessment. (Tr. 206). The doctors diagnosed Plaintiff as having uncontrollable diabetes as well as dehydration. (Tr. 203-204). Plaintiff was discharged on September 15, 2007 and was told that he could resume normal activities. (Tr. 201).

### c.   Consultative Examiner's Report – Dr. Alexander Hoffman, M.D.

Dr. Alexander Hoffman, M.D., performed a physical examination of Plaintiff on May 19, 2008 and largely found no problems. (Tr. 225-229). During the examination, he found that Plaintiff was alert and oriented as to time, place and person. (Tr. 226). He walked with normal gait and did not use an assistive device. Id. His blood pressure was slightly high at 150 over 88. Id. His lungs were clear to percussion and auscultation without wheezing, rales, or rhonchi. Id. Dr. Hoffman did note that Plaintiff weighed 260 pounds. Id. Dr. Hoffman also found that Plaintiff had the following characteristics: 1) full range of motion for both knees without swelling or crepitus; 2) very good upper body grip strength; 3) normal biceps and triceps strength and full range of motion at the wrist and elbow with full extension at the shoulders; 4) ability to stand and support himself on one leg at a time; 5) ability to do deep knee bends; 6) ability to flex at the waist to within eight inches of the floor; and 7) ability to walk on both heels and toes. Id.

5

Overall, Dr. Hoffman's report found that Plaintiff coped with diabetes for the past seventeen years. (Tr. 227).  The doctor noted that Plaintiff had some complications of neuropathy involving lower extremities, and several episodes of quite elevated glucose levels that require hospitalization. Id.  Lastly, Dr. Hoffman found that Plaintiff had hypertension that was relatively well controlled and had no cardiac disease. Id.

### d.  Physical Residual Functional Capacity Assessment - Dr. Nancy Simpkins

The record also notes that on June 23, 2008, Dr. Nancy Simpkins, M.D., completed Plaintiff's Physical Residual Functional Capacity (hereinafter "RFC") Assessment form (Tr. 232-239), in which  Dr. Simpkins made a number of findings.  First, she found that Plaintiff could lift twenty pounds occasionally and ten pounds frequently; could stand and/or walk for at least two hours in an eight-hour workday; could sit for a total of about six hours in an eight-hour workday; and was not limited in push and/or pull strength. (Tr. 233).  Second, in terms of postural limitations, she found that Plaintiff occasionally could climb, balance, stoop, kneel, crouch, and crawl. (Tr. 234).  Lastly, Dr. Simpkins mentioned that Plaintiff should avoid concentrated exposure to extreme cold and heat, wetness, humidity, noise, vibration, fumes, odors, and hazards. (Tr. 236).

### e.  Anesthesiologist Report – Dr. Yuhlin Lin, M.D.

The record contains a report from Dr. Yuhlin Lin, M.D. who examined Plaintiff on February 13, 2008, after he complained of pain and numbness in his right neck and arms for the previous three months. (Tr. 241).  Plaintiff had limited range of motion in his neck, with right neck pain when extending, bending, rotating his neck, and tingling in the right arm and second and third fingers. Id.  Dr. Lin also noted that Plaintiff had full (5+) muscle power, normal (2+) deep tendon reflexes (hereinafter "DTL"), and intact vibratory sensation bilaterally. Id.  Upon

6

examination, Dr. Lin diagnosed Plaintiff with cervical spondylosis, and right cervical facet pain and radiculopathy. Id.  Dr. Lin also suggested that Plaintiff undergo cervical epidural steroid injections. (Tr. 242).  By March 16, 2008, Plaintiff reported feeling better with residual tingling/numbness on the right thumb, but that the neck and shoulder pain still remained. Id.  An MRI was done on September 12, 2008, and revealed that Plaintiff had cervical spondylosis and disk herniation at C5-C6 and C6-C7, with right shoulder and acrominion joint and biceps tendonitis and tendinosis. (Tr. 243).

Dr. Lin treated Plaintiff's cervical spondylosis and disk herniation on October 22, 2008 with a cervical epidural steroid injection and epidurogram. (Tr. 243).  After treatment, Dr. Lin found no complications from the surgery and found that Plaintiff experienced an improvement with his neck pain and had no motor or sensory deficit from the surgery. (Tr. 244).

### f.  Third Hospital Visit – January 7, 2009

Plaintiff was admitted to the hospital on January 7, 2009 after complaining of chest pain. (Tr. 245-246).  An angiography was done on Plaintiff and revealed that there was an eighty percent concentric stenosis of the mid-left anterior descending coronary artery (hereinafter "mid-LAD"), but with normal left ventricular systolic function and overall ejection fraction estimated at fifty-five percent. (Tr. 246).  The Referring Physician, Dr. Mazhar El-Amir, M.D., also noted that there was a normal aortic route size, and no aortic insufficiency or dissection. (Tr. 246).  A stent was successfully placed into Plaintiff's left coronary artery. (Tr. 247).  Plaintiff was discharged on the following day and was told to continue taking Diovan, Lyrica, Aspirin, Plavix, Crestor, Pepcid, and Insulin. (Tr. 247, 249).  Plaintiff was also advised to resume normal activities as tolerated. (Tr. 274).

### g.  Disability Reports from Plaintiff, Field Office and Appeals Council

The record contains several disability reports.  The first disability report comes from

Plaintiff.  In this report, Plaintiff listed his illness, injuries, and conditions, and how they limit

his ability to work. (Tr. 137).  He stated that his diabetes caused him to be unable to see while

working, and made his "legs and feet feel as though they're giving out." Id.  Plaintiff claimed

that the onset date is November 1, 2006, and admitted to not working once the symptoms

interfered with his ability to work. Id.  Plaintiff listed November 2005 as the last date of work.

(Tr. 138).  In describing his employment, Plaintiff has worked in various industries ranging from

welding at a metal company to preparatory cooking at a hospital. Id.  The longest job that

Plaintiff held was in construction, where he carried heavy tools and did basic construction work.

Id.  He was also required to lift pipes, bricks, sand bags, and basic construction supplies. (Tr.

139).  On this report, Plaintiff mentioned that he frequently lifted "50 pounds or more," and that

the heaviest weight lifted was about "100 pounds or more." Id.

The next disability report in the record is from the field office dated April 25, 2007. (Tr.

145). The interview was conducted in person, and at that time Plaintiff had some difficulty with

seeing but no difficulty in hearing, reading, breathing, understanding, coherency, concentrating,

talking, answering, sitting, standing, walking, using his hands or writing. (Tr. 144).  The

interviewer described Plaintiff as being casually dressed but "seemed to be in pain, [and]

moaning throughout the interview." Id.

The next disability report in the record is a disability report to the Appeals Council from

Plaintiff.  This form is undated.  Plaintiff noted three changes to his current physical condition:

Plaintiff stated that 1) as of July 2007, he was hospitalized twice after his initial filing and then

had severe nerve damage and dislocation of a disc in the spine; 2) as of June 10, 2007, he was

experiencing constant leg and foot pain due to poor circulation in limbs caused by nerve damage and numbness to the left side of his body; and 3) as of September 12, 2007, he developed hypertension and must take daily medication for it. (Tr. 147).

The next report on the record is a function report from Plaintiff, dated April 4, 2008, which recorded how his impairments limit his activities. Plaintiff made appointments to see the doctor, picked up medications, and went to therapy and exercises. (Tr. 152). He prepared his own meals on a daily basis and occasionally did household chores. (Tr. 154). Plaintiff did go outside on a daily basis depending on the weather and walked or used public transportation as his main means of travel. (Tr. 155). Plaintiff claimed that he no longer played sports like he used to; instead, he read the mail and the Bible on a daily basis. (Tr. 156). Plaintiff attended Bible study twice a week, and visited the church and doctors. Id. Plaintiff stated that he no longer participated in many social events or saw his friends because his "patience ha[d] become short." Id.

The last disability report on record from Plaintiff is dated September 10, 2008. The details from this report are fairly consistent with prior reports detailed above.

### h. Plaintiff Lawrence Smith's Testimony

Plaintiff, Lawrence Smith, testified at the ALJ hearing on October 28, 2009. (Tr. 22). Plaintiff's attorney, Abraham Alter, was present. Plaintiff testified that he was then forty-four years old and has a twelfth grade education. (Tr. 32). Plaintiff's attorney acknowledged that Plaintiff has a long history of different jobs – at least fifteen jobs are listed on his disability report. Id. Plaintiff explained that he received short jobs for each environmental problem that may arise. Id. Other jobs that Plaintiff took up were working with a construction company, a

maintenance company, a management company, a cleaning company, a spot welding company, and a health services company. (Tr. 32-34).

Plaintiff testified about his physical state.  He stated that he feels pain on his neck, back, ankles, feet and hands. (Tr. 24).  He also experienced numbness and tingling in his hands, swelling in his feet, erectile dysfunction, and difficulty with walking. (Tr. 24-26).  Plaintiff also testified to instances of elevated blood sugar levels and difficulty with controlling his diabetes. (Tr. 39).  During questioning, Plaintiff testified that he felt numbness on his right hand on a daily basis and that this numbness affected his ability to do things like lift pitchers. (Tr. 44-45). Plaintiff also claimed he cannot tilt his head in certain positions for a very long time. (Tr. 45).

Plaintiff's attorney then asked Plaintiff about his activities and what he enjoys doing. First, he answered that he lives alone and maintains a sedentary lifestyle such as lying down and watching television. (Tr. 30).  Second, he said that he used to bowl and fish with his nephew but no longer does that now. Id.  Third, Plaintiff mentioned that he does not consume alcohol or drugs and is involved with church activities. (Tr. 36).

Plaintiff's attorney then asked Plaintiff about his current treatment for his physical problems.  Plaintiff stated that he gets shots in his neck area to alleviate the pain. (Tr. 46, 49). He also stated that these shots do help alleviate the pain for a couple of months. (Tr. 49). Plaintiff also said that he is taking Oxycontin three times a day for pain management. Id.

## II.  PLAINTIFF'S ARGUMENT

Plaintiff's argument mainly consists of four points: 1) the ALJ omitted most of Plaintiff's severe impairments at Step Two of the test to determine whether an individual is disabled; 2) the ALJ's mistake in Step Two caused the ALJ to not combine and compare all of Plaintiff's severe

impairments with the Commissioner's listings; 3) the ALJ's Step Four analysis of the RFC lacks

medical foundation and is directly contradicted by the Commissioner's own experts; and 4)

vocational expert testimony was necessary.  Overall, Plaintiff argues that the ALJ's decision was

not based on substantial evidence of the record and asks this Court to remand the decision and

order a new hearing.

## III.  STANDARD OF REVIEW

A reviewing court will uphold the Commissioner's factual decisions if they are supported

by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3) (2006); Skyes v. Apfel, 228 F.3d

259, 262 (3d Cir. 2000).  Substantial evidence is "more than a mere scintilla . . . but may be less

than a preponderance." Woody v. Sec'y of Health & Human Serv., 859 F.2d 1156, 1159 (3d Cir.

1988).  It "does not mean a large or considerable amount of evidence, but rather such relevant

evidence which, considering the record as a whole, a reasonable person might accept as adequate

to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988) (citations omitted).

Not all evidence is considered "substantial."  For instance,

> [a] single piece of evidence will not satisfy the substantiality test if the [Commissioner]
> ignores, or fails to resolve, a conflict created by countervailing evidence.  Nor is evidence
> substantial if it is overwhelmed by other evidence - particularly certain types of evidence
> (e.g. that offered by treating physicians) - or if it really constitutes not evidence but mere
> conclusion.

Wallace v. Sec'y of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983) (quoting Kent

v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)).  The ALJ must make specific findings of fact to

support his ultimate conclusions. Stewart v. Sec'y of Health, Educ. & Welfare of the U.S., 714

F.2d 287, 290 (3d Cir. 1983).

Nonetheless, the "substantial evidence standard is a deferential standard of review." Jones v. Barnhart, 364 F.3d 501, 503 (3d Cir. 2004).  As such, it does not matter if this Court "acting de novo might have reached a different conclusion" than what the Commissioner found. Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190-91 (3d Cir. 1986) (quoting Hunter Douglas, Inc. v. NLRB, 804 F.2d 808, 812 (3d Cir. 1986)).  "The district court…is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992) (citing Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir. 1984)).

### IV.   APPLICABLE LAW

#### A.  THE FIVE-STEP PROCESS FOR DETERMINING WHETHER PLAINTIFF IS DISABLED

A claimant's eligibility for benefits is governed by 42 U.S.C. § 1382.  A claimant is considered disabled under the Social Security Act if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A) (2006).  A claimant bears the burden of establishing their disability. Id. § 423(d)(5)(A) (2006).  The Social Security Administration has established a five-step process for determining whether an individual is disabled. 20 C.F.R. §§ 404.1520(a) and 416.920(a) (2012).

Step One requires the ALJ to consider if the claimant is performing any work activity.  If they are, they must assess if it is considered substantial, gainful activity. 20 C.F.R. § 404.1520(i) (2012).  Substantial work activity is work that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a) and 416.972(a) (2012).  Gainful work activity is work

normally done for profit, whether or not a profit is realized. 20 C.F.R. § 404.1572(b) (2012). If it is found that the claimant is performing substantial, gainful activity, then the ALJ proceeds to Step Two. 20 C.F.R. §§ 404.1520(i) and 404.1520(b) (2012).

Step Two requires the ALJ to determine if the claimant has a medical impairment that is severe or a combination of impairments that are severe. In order to qualify as severe, an impairment or combination of impairments must significantly limit an individual's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c) and 416.920(c) (2012). If an individual is not determined to have a severe impairment or severe combination of impairments, the individual is not considered disabled. If the individual is determined to have a severe impairment or a severe combination of impairments, then the ALJ will proceed to Step Three.

Step Three requires the ALJ to evaluate the claimant's impairment and determine if it is equal to, or exceeds, one of those specified in the Listing of Impairments in Appendix 1 of the Regulations (hereinafter "Listings"). 20 C.F.R. §§ 404.1520(d) and 416.920 (2003). If the claimant's impairments are found to be equal to or greater than one of the Listings, then the claimant's RFC must be determined. Id. RFC is an individual's ability to do physical and mental work activities despite limitations from his impairment. Your RFC, 20 C.F.R. §§ 404.1545(a)(1) and 416.945(a)(1) (2003). A claimant's RFC is determined by considering all relevant evidence in the record. Id. Once the claimant's RFC is determined, the reviewing officer progresses to Step Four.

Step Four evaluates the RFC determination and the claimant's past relevant work. Evaluation of Disability, 20 C.F.R. § 404.1520(iv) (2003). The impairment must be found to prevent one from doing past relevant work. Id. If it is determined that the claimant is not prevented from doing their past relevant work, then the claimant is not disabled. If it is

13

determined that the claimant is prevented from doing their past relevant work, then the analysis proceeds to Step Five.

At Step Five, finally, it must be determined if the claimant can perform any other work in the national economy that is consistent with his or her medical impairments, age, education, past work experience, and RFC. Id.; See Evaluation of Disability 20 C.F.R. § 416.920(g) (2003).  If the claimant is found able to perform other work, he or she will not be found disabled. Id.  The claimant, generally, continues to have the burden of proving disability at this final step.  A limited burden is shifted to the Social Security Administration, however, to provide evidence that demonstrates the availability of other work in significant numbers in the national economy for the claimant to perform, given his or her specific RFC.  Evidence, 20 C.F.R. § 404.1512(g) (2003).

This Court is charged with reviewing the ALJ's decision on this application to determine if the Commissioner and the ALJ's decision are supported by substantial evidence. Grant v. Shalala, 989 F.2d 1332 (3d Cir. 1993).  This Court cannot consider any information beyond what is in the record before us, and what was in the record before the ALJ that considered the application.

### V.   ANALYSIS

Plaintiff asks this Court to reverse the ALJ's decision and remand for a new hearing based on four arguments raised by his attorney previously and hereinafter discussed. See supra Part II.  The Commissioner contends that the ALJ's decision should be affirmed because the ALJ adhered to the Social Security Administration regulations, applied the proper legal standards, and properly supported his decision with ample medical evidence from the record.

**A.  ALJ's Omission of Most of Plaintiff's Severe Impairments at Step Two**

Plaintiff first argues that "most of Plaintiff's severe impairments [were] omitted" at Step Two. (Pl.'s Br. 9).  Specifically, he claims that the ALJ failed to consider the following as severe impairments: his weight (260 pounds), myocardial ischemia, immediate coronary syndrome, coronary atherosclerosis of his coronary vessels, twin disc herniations at C5-C6 and C6-C7, limited range of motion in the neck, right neck pain on rotation, and pain in the right arm and hand in the second and third fingers in addition to cervical radiculopathy. (Pl's Br. 15-16). Plaintiff's main argument here is that because Plaintiff is obese with a body mass index that exceeds forty, the ALJ should have considered his impairments in combination with obesity in order to determine whether the combination meets the requirements of a Listing. (Pl's Br. 18-21).

Step Two inquiry is a "de minimis screening device to dispose of groundless claims . . . . If the evidence presented by the claimant presents more than a slight abnormality, the Step Two requirement of severe is met, and the sequential evaluation process should continue." Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 546 (3d Cir. 2003).  Courts have found that even if the ALJ identifies only one severe impairment, any failure on the ALJ's part to identify other conditions as being severe does not compromise the integrity of the analysis. See Salles v. Comm'r of Soc. Sec., 229 F. App'x 140, 145 n.2 (3d Cir. 2007); Ross v. Astrue, No. 08-5282 (SDW), 2010 WL 777398 at *13 (D.N.J. Mar. 8, 2010); Rivera v. Comm'r of Soc. Sec., 164 F. App'x 260, 262 n.2 (3d Cir 2006).  The ALJ's decision as a whole must have "sufficient development of the record and explanation of findings . . . ." Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004).

In this case, the ALJ found substantial evidence to prove that Step Two of the test was satisfied and properly proceeded to Step Three.  The ALJ found that Plaintiff had the severe

impairments of diabetes and cervical spondylosis. (Tr. 12).  Each of these findings was based on

a thorough examination of the record. (Tr. 12-13).  The ALJ found that Plaintiff had diabetes

after reviewing evidence regarding his hospital visits on July 2007 and September 2007 as well

as a doctor's visit on May 2008. Id.  Additionally, the ALJ found that Plaintiff had cervical

spondylosis at C5-C6 and C6-C7 after receiving evidence about an MRI performed on

September 2008.  (Tr. 13).

Moreover, there is no indication that the ALJ failed to consider some of Plaintiff's

impairments.  First, Plaintiff alleges that the ALJ failed to take into account Plaintiff's various

heart conditions when rendering its decision to deny Plaintiff's disability claim. (Pl's Br. 15).

The ALJ did, however, consider Plaintiff's heart problems before finding that Plaintiff had

diabetes and cervical spondylosis as shown by his mentioning that Plaintiff had successfully

underwent cardiac catherization and was released with advice to resume normal activities. (Tr.

13).  Second, Plaintiff claims that the disc herniations were not considered as severe

impairments. (Pl's Br. 15).  This assertion is incorrect because the ALJ considered the presence

of disc herniation at C5-C6 and C6-C7 when he looked at evidence about the cervical

spondylosis. (Tr. 13).

Even if the ALJ failed to consider some ailments as severe impairments, this claim is

irrelevant because step two is a low-threshold test.  Some ailments that were not looked into, as

Plaintiff suggested, include Plaintiff's weight/BMI, sleep apnea, right shoulder and acromion

joint tendonitis, biceps tendonitis, pain and limited range of motion of the right neck and two

fingers of the right hand and cervical radiculopathy.  This Court finds that there is substantial

evidence to show that the ALJ properly applied Step Two to find two severe impairments and

proceeded to Step Three of the test. See Newell v. Comm'r of Soc. Sec., 347 F.3d 541, 546 (3d

16

Cir. 2003) ("If the evidence presented by the claimant presents more than a slight abnormality, the [Step Two] requirement of severe is met, and the sequential evaluation process should continue.").

### B.  Plaintiff's Complaints and their Relationship to the Listings

Plaintiff argues that the ALJ failed to combine and compare all of Plaintiff's severe impairments with the Commissioner's Listings. (Pl's Br. 21-23).  He states that the ALJ only considered Plaintiff's diabetes symptoms with Listing 9.08, but did not consider his herniated discs and cervical spondylosis with Paragraph 1.04A of the Listings. (Pl's Br. 23).

Listing 9.08 specifically addresses diabetes mellitus and requires that the diabetes mellitus be accompanied by either "neuropathy demonstrated by significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements, or gait, and station," or "acidosis occurring at least on the average of once every two months documented by appropriate blood chemical tests." 20 C.F.R. Pt. 404, Subpt. P, app. 1 (2010).

In this case, the ALJ found that Plaintiff failed to show that he satisfied the requirements of Listing 9.08.  The ALJ found no evidence of neuropathy demonstrated by significant and persistent disorganization of motor function in two extremities, acidosis, or visual impairment. (Tr. 13).  The record supports the ALJ's findings.  First, there is no indication that Plaintiff has significant and persistent disorganization of motor function in two extremities.  Two doctors, Dr. Hoffman and Dr. Lin, reported that Plaintiff had normal gait, was moving without an assistive device, had muscle power, had full range of motion for both knees, was able to flex at the waist and could walk on both heels and toes. (Tr. 226, 241-242).  In addition, Dr. Hoffman's and Dr.

17

Simpkin's reports do not indicate that Plaintiff had any visual impairments. (See Tr. 225-227, 241-242).  As a result, this Court finds substantial evidence to support the ALJ's finding that Listing 9.08's requirements were not satisfied.

Even though the ALJ did not consider Listing 1.04(A) in his decision, this is not relevant because "a claimant bears the burden of producing evidence that [his] impairment is equivalent to a listed impairment" at Step Three. See Ballardo v. Barnhart, 68 F. App'x 337, 338 (3d Cir. 2008).  Listing 1.04(A) specifically addresses disorders of the spine that result in the compromise of a nerve root or the spinal cord.  20 C.F.R. Pt. 404, Subpt. P, app. 1 (2010).  Here, Plaintiff must show "nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)."  Id.

The record does not support a finding for Listing 1.04(A) even if Plaintiff presented this argument.  First, there are no indications of atrophy associated with muscle weakness in Dr. Hoffman or Dr. Lin's report.  Rather, both reports found that Plaintiff had good muscle strength. (Tr. 226, 241).  Second, there are no indications of sensory or reflexes loss associated with atrophy and muscle weakness.  Dr. Lin's post-operative report for Plaintiff's back treatment injections indicate that "at the time of the patient's discharge, there was no new motor or sensory deficit" and that his neck pain was improving from the treatment. (Tr. 244).

In conclusion, this Court holds that the ALJ's application of Step Three was appropriate and supported by substantial evidence from the record.

**C.   RFC Determination**

Plaintiff argues that the ALJ improperly evaluated his exertional and non-exertional

RFC.  First, Plaintiff alleges that an inconsistency exists between the ALJ's finding that the Plaintiff can perform "full range of light work" while the Commissioner seemed to think otherwise.  (Pl's Br. 27, 29).  He claims that the ALJ's exertional and non-exertional RFC determinations were not explained and are not consistent with the evidence of record or with the Commissioner's own review of physician's assessment of Plaintiff's capabilities. (Pl's Br. 28). Second, Plaintiff highlights another alleged inconsistency - that the ALJ improperly found no non-exertional impairments or limitations when evidence from the record suggests otherwise. (Pl's Br. 29) (mentioning that Plaintiff  had some non-exertional impairments such as only being able to "occasionally" climb, balance, stoop, crouch, or crawl and is incapable of working around extreme cold, extreme heat, wetness or humidity).

Before designating Plaintiff's RFC, the ALJ has to follow a two-step test.  First, the ALJ must determine whether there is an underlying medically determinable physical or mental impairment.  See 20 C.F.R. § 404.1529(d)(1) (2012); SSR 96-7p.  Second, once the medical or physical impairment can be shown, the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's ability to do basic work activities.  See SSR 96-7p.  Such determination "requires the adjudicator to make a finding about the credibility of the individual's statements about the symptom(s) and its functional effects."  Id.  The credibility of the statements is determined by considering the entire case record. Id.

In this case, the ALJ determined that Plaintiff is capable of a "full range of light work." (Tr. 13).  Full or wide range of light work requires the ALJ to conclude that one has the ability to "lift[] no more than 20 pounds at a time with frequent lifting or carrying of objects weighing

up to 10 pounds," that the work "requires a good deal of walking or standing", and when the

work involves sitting, most of the time is spent with "some pushing and pulling of arm or leg

control." 20 C.F.R. § 404.1567(b)(2012).  "If someone can do light work, [the ALJ] determine[s]

that he or she can also do sedentary work, unless there are additional limiting factors such as loss

of fine dexterity or inability to sit for long periods of time." Id.

      With regards to the first alleged inconsistency, this Court holds that ALJ Olarsch's

determination that Plaintiff is capable of full range of light work was supported by substantial

evidence from the record.  The ALJ's finding that Plaintiff could perform "full range of light

work" is consistent with the conclusions provided in the doctor's reports.  First, Dr. Simpkins, a

state agency physician, found that Plaintiff can frequently lift and/or carry (including upward

pulling) items weighing ten pounds or less. (Tr. 233).  Dr. Simpkins also concluded that Plaintiff

can occasionally lift and/or carry up to twenty pounds worth of weight. Id.  Plaintiff has

consistently testified to being able to lift between fifteen and twenty-five pounds of weight

without pain. See Tr. 28, 157.  Similarly, Dr. Powell and Dr. Lin have found that Plaintiff has

very good muscle strength, which is consistent with Dr. Simpkins' findings. (Tr. 226, 241-242).

Second, Dr. Simpkins found that Plaintiff is able to sit for a total of six hours in an eight-hour

workday, and has unlimited push/pull strength. (Tr. 233).  All of these facts indicate that the ALJ

was correct in finding that Plaintiff can perform a full range of light work.

      Furthermore, even though there may be a contradiction regarding Plaintiff's ability to

stand and walk and whether it fits into the Commissioner's definition of light work (Pl's Br. 29),

this contradiction is irrelevant.  Performing "light work" does not always entail a good deal of

standing and walking.  "Light work" can mean performing a job that requires "sitting most of the

time with some pushing and pulling of arm or leg controls." 20 C.F.R § 404.1567 (2012).  As

indicated by Dr. Simpkin's report, Plaintiff is able to perform light work based on the statutory definition. (Tr. 233) (stating that Plaintiff can sit for about six hours in an eight-hour workday and has unlimited push and pull abilities).

With regards to the second alleged inconsistency, the ALJ accurately decided to not consider Plaintiff's non-exertional limitations such as being able to "climb, balance, stoop, kneel, crouch or crawl" occasionally, or his need to avoid excessive noise, dust, and other environmental conditions.  For light work and sedentary jobs, "a person would not need to crouch and would need to stoop *only* occasionally (from very little up to one-third of the time, depending on the particular job)." SSR 83-14 (emphasis added).  Furthermore, an "inability to ascend or descend scaffolding, poles, and ropes" and "an inability to crawl on hands and knees" are examples of "nonexertional limitations or restrictions which have *very little* or *no* effect on the unskilled light occupational base." Id. (emphasis added).  Environmental conditions similarly do not significantly affect the potential unskilled light occupational base. Id.

The ALJ's detailed discussion about Plaintiff's medical record demonstrates substantial evidence to support his RFC conclusion.  The ALJ did not commit an error as a matter of law, and he did not fail to perform his duty in determining Plaintiff's RFC capabilities.


### D.   VOCATIONAL TESTIMONY

Lastly, Plaintiff argues that vocational testimony was required because he suffers from "non-exertional impairments, namely postural, environmental, obesity/sleep apnea related, sensory (neuropathy of the extremities) and . . . tiredness and fatigue from uncontrolled diabetes mellitus and dizziness and tiredness due to [using] Oxycontin to control his pain." (Pl's Br. 39).

Courts have found that vocational expert testimony is not always required.  The ALJ can

rely on evidence other than vocational expert testimony to establish that a claimant's non-exertional limitation does not diminish RFC. Skyes v. Apfel, 228 F.3d 259, 274 (3d Cir. 2000). Furthermore, the ALJ can rely on the Guidelines without hearing testimony from a vocational expert "as long as the claimant does not have both exertional and non-exertional limitations." Bailey v. Comm'r of Soc. Sec., 354 F. App'x 613, 619 (3d Cir. 2009).

In this case, the ALJ properly decided not to consider vocational expert testimony.  The ALJ determined that based upon substantial evidence, Plaintiff did not have exertional and non-exertional limitations to warrant a finding of being "disabled." (Tr. 15).  The ALJ considered Plaintiff's age, education, and work experience in this finding. Id.  Because the ALJ did not find exertional or non-exertional limitations, the ALJ did not have to bring in vocational expert testimony. (SSR 85-15).

## VI.      CONCLUSION

For the reasons stated above, the final decision entered by ALJ Olarsch is **affirmed**.

 S/ Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

Date:          March   28  , 2012
Original:      Clerk's Office
Cc:            All Counsel of Record

22